# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 19–0121-RBW |
| : | |
| **CHAUNCEY ALLEN JONES** : | |
| : | |
| **Defendant** : | |

_____

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW the Defendant, Chauncey Jones, by and through his attorneys, Michael E. Lawlor, and Nicholas G. Madiou, Brennan, McKenna & Lawlor, Chtd., and respectfully submits this memorandum in support of the arguments to be presented by the Defendant at the time of sentencing.

### Introduction

The United States of America charged Chauncey Jones in a one-count Indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). The offense in this case occurred on April 7, 2019. Mr. Jones made his initial appearance before this Court the next day, and has remained incarcerated since that time.

Mr. Jones proceeded to a motions hearing in this case challenging the constitutionality of law enforcement's search and seizure in this case. After this Court denied his motion to suppress he entered into a stipulated bench

1

trial on Count One thereby preserving his right to appeal this Court's ruling. Despite that, Mr. Jones has clearly demonstrated his acceptance of responsibility in this case.

Sentencing is currently scheduled for March 26, 2020. At the time of sentencing, Mr. Jones will have served nearly one year of incarceration. Mr. Jones respectfully submits this memorandum to aid the Court in imposing a just sentence in this case. This memorandum focuses on Mr. Jones's personal history and characteristics, including mental health concerns, his exposure to extreme violence and physical abuse, as well as his history of substance abuse.

Mr. Jones respectfully asks this Court to consider this information and exercise leniency in its ultimate resolution by imposing a variant sentence requiring no additional term of incarceration. In addition, Mr. Jones respectfully asks this Court to impose conditions of supervised release that include meaningful mental health and substance abuse treatment.

## **Guideline Considerations**

The base offense level applicable to Count One is 14, pursuant to U.S.S.G. § 2K2.1(a)(6)(A). In light of Mr. Jones's acceptance of responsibility and timely notification of his intention to plead guilty, a downward adjustment of two levels is applicable. Therefore, the total adjusted offense level for Count One is 12.

Mr. Jones is properly assessed 8 criminal history points, placing him in Criminal History Category IV. Based on a Criminal History Category IV and a total offense level of 12, the advisory sentencing guidelines range applicable to this case is 21 to 27 months of incarceration.

For the following reasons, Mr. Jones respectfully asks this Court to impose a variant sentence requiring no additional incarceration in this case.

## A Reasonable Sentence in this Case

The United States Supreme Court highlighted in *Pepper v. United States*, 562 U.S. 476 (2011), that the cornerstone of federal sentencing is to "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 487 (internal quotation marks omitted). That process is embodied in the sentencing system instituted by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

In *Booker*, the Supreme Court held that the mandatory nature of the United States Sentencing Guidelines—particularly 18 U.S.C. Section 3553(b)(1), which purported to make the Guidelines mandatory upon federal courts—was unconstitutional. The Court struck the mandatory language of the statute and held that, although a sentencing court shall consult the guidelines in fashioning a sentence, the court is permitted to "tailor the sentence in light

of other statutory concerns as well" with reference to the factors outlined in Section 3553(a). *Id.* at 245.

The core requirement of Section 3553(a) is that the Court impose a sentence "sufficient, but not greater than necessary," to comply with the purposes set forth in Section 3553(a)(2). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the guideline range; (d) the need to avoid unwarranted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense; to promote respect for the law and to provide just punishment for the offense; to afford adequate deterrence; to protect the public from future crimes and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. Courts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the Guidelines, so long as the ultimate sentence is *reasonable* and carefully supported by reasons tied to the factors enumerated in Section 3553(a).

Consistent with the principle of individualized sentencing is the wide discretion afforded the sentencing judge "in the sources and types of evidence used to assist in determining the kind and extent of punishment to be

imposed," in particular, "the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 477 ("[p]ermitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant").

## Mr. Jones's Background

Chauncey Jones was born in Denver, Colorado on July 26, 1993 to the non-marital union of Angela Jones and Chauncey Thurman. Chauncey was born in to a happy and healthy household with his parents and his younger brother. Chauncey's father worked as a blue-collar repair man and helped to make sure all basic needs were met. Mr. Jones's father was dedicated to his family and a caring and loving man.

Unfortunately, in 2002, everything changed for Chauncey and his entire family. At that time, Chauncey's father was tragically murdered. Chauncey was nine years old. The violent death of his father profoundly altered Mr. Jones's life. As a child, Chauncey was encountered with the sudden loss of a loving and supportive father, and introduced to the reality of unimaginable violence. He went from being a warm and happy young boy to being depressed and withdrawn.

Following the death of his father, Chauncey's mother moved back to

Washington, D.C. to be closer to family. Without the financial support of Chauncey's father, the family struggled immensely. Chauncey's mother did everything she could to make ends meet, but for the first time Chauncey and his brother did not get what they needed. The family moved back to the District of Columbia to gain support from her family and provide a more stable life for Chauncey and his younger brother.

Unfortunately, during this incredibly difficult time, Ms. Jones turned to using drugs and quickly became consumed by addiction. Soon after Chauncey's mother was nearly absent in Chauncey's life. As a result, Chauncey went to live with his paternal great-grandparents, where he remained for the next 7 years.

Although Chauncey had a loving and supportive home with his great-grandparents, he was largely left without adult supervision and guidance. Chauncey was free to hang out late and socialize in the streets with older individuals in his neighborhoods. During this time Chauncey was exposed to realities no child should grow accustomed to, including the drug trade, and violent street crimes.

Unsurprisingly, Mr. Jones dropped out of high school during the tenth grade. He continued to hang out in the streets, and had little guidance or exposure to alternative lifestyles despite his loving grandparents who

6

supported him emotionally and financially.

When Chauncey became an adult, his mother sought meaningful drug treatment, and began what has been a remarkable period of recovery. Chauncey went back to living with his mother when he turned 18. He has repaired his relationship with his mother and at this time the two share an incredibly loving and supportive bond. Chauncey was living with his mother up until the time of his arrest in this case. Despite the challenges he and his mother have had in the past he looks up to her and sees her as a source of inspiration.

At this time, Mr. Jones respectfully asks this Court to consider his background and upbringing when imposing a just sentence in this case.

### Mental Health

Throughout his life, Mr. Jones has struggled with serious mental health concerns that largely went unaddressed. At the age of nine, Chauncey experienced the violent death of his father. Shortly after, Mr. Jones all but lost his mother to a crippling drug addiction. He was made to live with extended family because his mother was unable to care for him. Chauncey struggled with depression from this point in his young life, but never received the sustained treatment he needed as a young child.

These experiences have led to significant feelings of anxiety, insecurity, and increased vulnerability to stress. When Mr. Jones is emotionally overwhelmed, he attempts to avoid those situations. His reliance on illicit substances is his primary coping mechanism. It serves to reduce the anxiety and tension he experiences. It reflects his effort to self-medicate.

Fortunately, in 2015, Mr. Jones was referred to D.C. Mental Health by the District of Columbia Court Services and Offender Supervision Agency (CSOSA). There, Mr. Jones was diagnosed as bipolar and schizophrenic, and was prescribed medication. For the first time in his life, Mr. Jones was addressing his mental health needs.

In addition to taking medication, Mr. Jones obtained counseling from D.C. Mental Health. He saw a counselor twice a week for a period of time, but eventually stopped due to the closing of his treatment provider. Mr. Jones sought treatment from a new counselor, but did not follow up with consistent meetings. Mr. Jones sought treatment on and off until the date of his arrest.

Chauncey's history demonstrates that throughout his childhood he has experienced significant adverse life events, including the murder of his father, physical abuse, and a period of abandonment from his mother. At this time, Mr. Jones respectfully asks this Court to consider his history of mental health

concerns and order meaningful mental health treatment for Mr. Jones while on supervised release.

<u>Substance Abuse</u>

It is not surprising given Mr. Jones's history of trauma and mental health issues, that he has also struggled with serious substance abuse.

Mr. Jones began using marijuana in the eighth grade, and continued to use the drug up until the time of his arrest. Mr. Jones explained that marijuana helped him with his unaddressed mental health issues. "Specifically, the drug calmed him down and helped him keep a level head." PSR, at ¶ 53. During his PSR interview, Mr. Jones also reported a substance abuse history that includes ecstasy, heroin, opiate pills, Promethazine syrup, and K2 spice.

Mr. Jones also struggled with serious alcohol abuse. He reported that he drank nearly every day up until the time of his arrest. "At the height of his alcohol consumption, he was drinking one-fifth gallon of tequila a day." PSR at ¶ 54. During his PSR interview Mr. Jones reported that his alcohol abuse was what caused him the most problems, "those being interpersonal, social, and familial." PSR at ¶ 54.

Mr. Jones respectfully asks this Court to consider his history of substance abuse, and his need for treatment when fashioning an appropriate sentence in this case. During the PSR interview, Mr. Jones reported that while

9

he has "never participated in substance abuse treatment, he would like to participate in treatment both while incarcerated and while on supervised release." PSR at ¶ 56.

### Exposure to Abuse, Trauma and Extreme Violence

As described above, Mr. Jones found himself on the streets at a very early age. The neighborhoods Mr. Jones grew up in were dangerous. As a result, he was often exposed to communal violence, and criminal activity. This exposure to violence, together with the volatile and chaotic nature of his upbringing, including the murder of his father and his mother's absence due to drug addiction, almost certainly had a negative impact on Mr. Jones's brain development.

In addition, Mr. Jones suffered from extreme physical abuse as a child in Colorado. When he was six or seven years old, he was physically beaten by his daycare provider as a form of discipline. The physical abuse was so severe that Mr. Jones had welts and bruises from beatings sustained with extension cords, shoes, a paddle, hangers, and belts. Mr. Jones remembered that the beatings were sometimes so bad that he could not sit down.

The impact of community violence and physical trauma has only recently begun to be understood. Dr. Howard Spivak, Director of the Division of Violence Prevention within the National Center for Injury Prevention and

Control at the Centers for Disease Control (CDC), has noted that "[y]outh living in the inner cities show a higher prevalence of post-traumatic stress disorder than soldiers.  Unlike soldiers, children in the inner city never leave the combat zone and often experience trauma repeatedly."[1]

As science catches up with an increasingly complex combination of societal impacts on development, we now understand that there are significant neurobiological consequences to experiencing traumatic stress as a child and adolescent.  For example, the Corpus Callossum integrates the right and left side of the brain.  It is smaller in those who have experienced childhood trauma, which causes difficulty in language and behavior.  Those affected often have trouble resolving conflicts with words and with other problem-solving techniques.

Those who have suffered childhood trauma are often also vulnerable to mental health problems due to difficulty in learning from past experiences.  Those with traumatized brains experience faster fear, anxiety, nervousness and hyper-vigilance. Individuals who experienced trauma like Mr. Jones also have smaller, less active Frontal Lobes, which help people predict behavioral consequences, control impulses and organize daily

---

[1] Dr. Spivak presented his findings at a Congressional Briefing on Preventing Violence Using the Public Health Approach on April 27, 2012.

life.  The frontal lobes are not fully developed until between the ages of 24-26.  In those who have been traumatized, the underdevelopment combined with trauma impairs one's ability to weigh consequences and control emotions. These are biological differences that manifest in the brains of children who have been exposed to trauma.  We are only now beginning to realize the science of how our environs shape our brains and future.

Mr. Jones respectfully asks this Court to consider his exposure to extreme violence and trauma when imposing a just sentence in this case.

Family Circumstances

Mr. Jones has been in a committed relationship with Ms. Raven Tate for several years. Together Ms. Tate and Chauncey share a two-year old son named Cameron. Ms. Tate lives in Southeast Washington, DC, and she works as a security guard at a P&C Bank in the area. Cameron and Raven live with Ms. Tate's mother. Prior to Mr. Jones's arrest in this case he enjoyed an extremely active role in Cameron's life. He saw his son frequently, and provided him with emotional and loving support.

While this time of incarceration has proved to be incredibly difficult for Chauncey, as well as Ms. Tate and their son, the two are committed to one another, and hopeful that Chauncey can be released from incarceration and placed on strict conditions of supervised release in order to provide much

needed structure for their family.

Mr. Jones is an incredibly loving and emotionally supportive father. Mr. Jones wants nothing more than to receive long-term and meaningful mental health and substance abuse treatment for no greater reason than to be there both physically and emotionally for his son. He respectfully asks this Honorable Court to take in to consideration his family circumstances when sentencing him in this case.

Family Support & Home Plan

Mr. Jones stands before the Court with the tremendous support of his mother and other members of his family, who all support and love him dearly. Those closest to Mr. Jones have affirmed that support in advance of sentencing. Mr. Jones's mother as well as other members of his family have taken the time to write to this Honorable Court to ask for leniency and show their support Chauncey during this time. *See* Exhibit A. Mr. Jones respectfully asks this Court to consider these letters when imposing a just sentence in this case.

Should Mr. Jones be released from incarceration he has a healthy and realistic home plan in place. As noted in the PSR, Mr. Jones was living at 3500 13th Street SE, Washington, DC, with his mother at the time of his arrest. During an interview with PSR author, Ms. Jones related that she misses her

son greatly and is ready for him to return home. She made clear that Mr. Jones would return to live with her should he be released from incarceration. Ms. Jones is gainfully employed as a Lead Monitor ensuring safety and intervention at homeless shelters through the District of Columbia Community Partnership for the Prevention of Homelessness. Should Mr. Jones be released he would have the support of his loving mother who is physically and financially able to support him while on supervised release, and encourage him to put this shameful chapter of his life behind him.

For these reasons, Mr. Jones respectfully asks this Court to consider the support he enjoys from his family, as well as the realistic home plan in place upon his release.

## **Conclusion**

Mr. Jones respectfully asks this Court to consider the arguments presented here, namely, his background and socially history, his acceptance of responsibility, and his need for meaningful mental health and substance abuse treatment. For these reasons, Mr. Jones respectfully asks this Honorable Court to impose a sentence requiring no further incarceration, followed by significant treatment while on supervised release.

Respectfully submitted,

/s/
_____
Michael E. Lawlor
Nicholas G. Madiou
Brennan McKenna & Lawlor, chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301.474.0044
mlawlor@verizon.net
nickmadiou@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 12, 2020, a copy of the foregoing was sent to the United States Attorney's Office for the District of Columbia, via ECF.

/s/
_____
Michael E. Lawlor